# UNITED STATES DISTRICT COURT

for the

District of Oregon

FILED 03 JUL '25 09:14 USDC-ORE

_____Eugene\_\_\_\_\_ Division

Logan Martin Isaac

)
)
)
)

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)*

-v-

Sen. James Ivory Manning, Jr., Rep. Shelly Boshart Davis, Renee Perry, OSP, ODJ, Rebecca Maile, John and Jane Does 1-10.

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

Case No. 6:25-CV-01159-MC
*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)* ✔Yes ☐No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS
(42 U.S.C. §§ 1983, 1985(3); FIRST & FOURTEENTH AMENDMENTS)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

# INTRODUCTION

1. This is a civil rights action brought under 42 U.S.C. §§ 1983 and 1985(3) to redress violations of Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution.

2. Plaintiff Logan Martin Isaac is a disabled Iraq war veteran who has engaged in protected advocacy for military civil rights legislation before the Oregon Legislative Assembly since 2024.

3. After Plaintiff expressed dissatisfaction with legislative delays and informed staff he would discuss the matter with media as part of his accountability advocacy, Defendants retaliated by banning him from legislative offices and ultimately the entire State Capitol.

4. Defendants' actions were taken in response to Plaintiff's protected political speech and petitioning activities, and were motivated by hostility toward his military status and advocacy challenging institutional practices.

# JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343(a) because this action arises under the Constitution and laws of the United States.

6. Venue is proper in the Eugene Division of this Court under 28 U.S.C. § 1391(b) and Local Rule 3-2 of the District of Oregon because the events giving rise to the claims occurred in Marion County, Oregon, and Plaintiff resides in Albany, Oregon, in Linn County.

# PARTIES

7. **Plaintiff Logan Martin Isaac** is a resident of Albany, Oregon, located in Linn County. He is a United States Army veteran who served in Iraq and is currently service-connected disabled. Since 2024, he has advocated for comprehensive military civil rights legislation before the Oregon Legislature.

8. **Defendant James Ivory Manning, Jr.** is a member of the Oregon State Senate and Chair of the Committee on Veterans, Emergency Management, Federal and World

Affairs. As committee chair, he has final authority over scheduling hearings for veterans-related legislation. He is sued in his individual and official capacities.

9. **Defendant Shelly Boshart Davis** is a member of the Oregon House of Representatives representing District 15, which includes Plaintiff's residence. She is sued in her individual and official capacities.

10. **Defendant Renee Perry** is a staff member in Representative Davis's legislative office and a state employee who characterized Plaintiff's protected speech as threatening and called Oregon State Police. She is sued in her individual capacity.

11. **Defendant Oregon State Police (OSP)** is the state law enforcement agency that enforces access restrictions at the Oregon State Capitol.

12. **Defendant Oregon Department of Justice (ODJ)** provides legal representation to state agencies and is named for purposes of declaratory and injunctive relief regarding discovery obligations.

13. **Defendant Rebecca Maile** is an Assistant Attorney General who represented the State of Oregon in civil litigation involving Plaintiff and made materially false representations to the court regarding case readiness. She is sued in her individual capacity.

14. **John and Jane Does 1–10** are unknown individuals, including potentially Brett Hanes (Legislative Administrator) and other state employees, who participated in or conspired to violate Plaintiff's constitutional rights.

# STATEMENTS OF FACT

## Federal Recognition of Military Families as Protected Class

15. The Hate Crimes Prevention Act of 2009 (HCPA), Pub. L. 111-84, established that hate crimes "devastate not just the actual victim and the family and friends of the victim, but frequently savage the community sharing the traits that caused the victim to be selected." 34 U.S.C. § 30501.

16. Section 4712 of the HCPA, known as "The Soldiers Amendment," extended hate crime protections to "members of the uniformed services" and their family members, codified at 18 U.S.C. § 1389.

17. During Senate floor debate on July 20, 2009, Senator Jeff Sessions, the sponsor of the Soldiers Amendment, explicitly described the provision as creating "a new Federal crime

2

which puts members of the U.S. military on equal footing with other protected classes."

18. The Soldiers Amendment was approved unanimously by the United States Senate, with both Oregon Senators Ron Wyden and Jeff Merkley voting in favor of explicitly recognizing military families as a protected class.

19. Congressional intent to establish military families as a protected class is further evidenced by the legislative history and structure of the HCPA, which places military service members in the same statutory framework as other federally protected classes.

20. In August 2024, Senator Ron Wyden's Veterans Affairs Constituent Services Representative Eric Davis confirmed that "military members service members are [a protected class], it just doesn't get enforced in the manner in which it should."

21. Under *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024), courts must defer to clear Congressional intent, and "if Congress's intent is clear, that is the end of the matter."

22. Defendants' coordinated campaign against Plaintiff was motivated by animus toward his military status and advocacy for military civil rights, constituting discrimination against a federally recognized protected class.

## Background: Plaintiff's Protected Advocacy

23. Logan Martin Isaac is a United States Army veteran who served in Iraq. He has dedicated significant time and resources to advocating for military civil rights legislation since 2016.

24. In March 2024, Plaintiff began engaging in protected advocacy before the Oregon Legislative Assembly seeking passage of comprehensive military civil rights legislation that would be the first of its kind in the nation.

25. On March 28, 2024, Plaintiff initiated a Constituent Meeting Request with Representative Davis to discuss "issues facing veterans and military families" expressing urgency based on veteran suicide statistics and the need for civil rights protections.

26. Plaintiff eventually drafted legislation to establish fundamental civil rights protections for current and former military members and their families, addressing issues including discrimination, equal access to services, and dignity in representation.

27. Plaintiff's advocacy constitutes protected political speech and petitioning activity under the First Amendment, as he seeks redress of grievances through the legislative process

3

on behalf of veterans and military families.

28. Plaintiff initially worked with former Representative James Hieb, who submitted the concept to Legislative Counsel as LC 2560. When Representative Hieb was not re-elected in November 2024, the legislation remained pending with Legislative Counsel.

29. Throughout this period, Plaintiff exercised his constitutional right to petition the government for redress of grievances and to engage in political speech regarding legislative priorities.

### Initial Legislative Advocacy with Representative Davis

30. On September 25, 2024, Plaintiff discussed military civil rights legislation with Representative Davis, his elected representative in the Oregon House.

31. Over the course of nearly a year, Plaintiff maintained contact with Representative Davis's office regarding the legislation, expressing urgency based on veteran suicide statistics and the need for civil rights protections.

### The January 27, 2025 Office Visit

32. On January 27, 2025, Plaintiff returned to Representative Davis's office to follow up on the military civil rights legislation, specifically to provide information about LC 2560 and contact information for Legislative Counsel staff member Chris Allnott.

33. During this meeting, Plaintiff spoke with staff members Renee Perry and Dru Draper about the status of the legislation and expressed frustration with delays, noting that "seventeen battle buddies are going to die today" due to veteran suicide rates and the lack of civil rights protections.

34. When staff indicated uncertainty about the office's ability to take on the legislation due to workload, Plaintiff stated: "my next stop is going to be the Oregonian. I'm your constituent. I've been speaking with [Representative Davis] about this for [nearly] a year."

35. This statement referred to Plaintiff's intent to discuss the matter with media outlets as part of his legitimate advocacy and accountability efforts, not as any form of threat or coercion.

36. Defendant Perry immediately characterized Plaintiff's statement as a "threat," despite Plaintiff's clarification that his reference to media contact constituted accountability, not

4

threats, to which Defendant Perry replied "I know it's accountability."

37. At no point during this interaction did Plaintiff threaten any person with harm, violence, or any unlawful conduct. His statements concerned legitimate legislative advocacy and media accountability.

38. When Plaintiff attempted to clarify that accountability journalism is not threatening, Defendant Perry became increasingly hostile and ultimately threatened Plaintiff, saying, "I'm gonna call OSP [Oregon State Police] if you do not tone your voice down!"

39. When Oregon State Police arrived, both Perry and Draper reassured the officers that they did not view Plaintiff's conduct as rising to the level requiring his removal from the premises; when OSP Troopers asked if they "want [Plaintiff] out of here?" Defendant Perry replied "No."

40. Despite this acknowledgment by the staff members who were present during the interaction, Representative Davis subsequently characterized the incident as unacceptable and used it as justification for imposing restrictions on Plaintiff's access.

### Representative Davis's Retaliatory Ban

41. On February 7, 2025, Representative Davis issued a written letter banning Plaintiff from her office for one year, stating that "the situation in my office on January 27, 2025, was not acceptable."

42. The letter acknowledged Plaintiff's "passion about veterans' issues" and thanked him for his "service and advocacy" while simultaneously punishing him for exercising those very rights.

43. Representative Davis stated she "cannot help you introduce your legislative concept over the next two sessions," effectively abandoning her constituent services responsibilities due to Plaintiff's protected speech.

44. This ban was issued without any due process, hearing, or opportunity for Plaintiff to respond to allegations, and was based on Representative Davis's characterization of the incident despite her own staff's acknowledgment to law enforcement that Plaintiff's conduct did not warrant removal.

### Coordinated Suppression of Related Military Civil Rights Legislation

45. Concurrently with Plaintiff's advocacy for state-level military civil rights legislation, Senate Joint Memorial 1 (SJM1) was pending before the Oregon Legislative Assembly,

5

sponsored by a supportive Senator.

46. SJM1 urged Congress to "conduct public hearings on anti-military bias and improve enforcement of hate-crime protections for military families," directly supporting Plaintiff's federal-level advocacy objectives.

47. On January 24, 2025, SJM1 was scheduled for a committee hearing on January 28, 2025, which the sponsor's office characterized as "a big deal as most bills never get a hearing."

48. Following the January 27, 2025 incident in Representative Davis's office, SJM1's scheduled hearing was immediately canceled and removed from the legislative schedule.

49. By February 5, 2025, SJM1 had been "sent back to the president's desk for re-referral" and was being directed to the Rules Committee, a procedural graveyard where legislation is typically killed.

50. Communications from the sponsoring Senator's office explicitly connected the killing of SJM1 to concerns about Plaintiff's "reputation of being combative" and indicated that Senator Manning and other officials no longer wanted to work with Plaintiff.

51. Upon information and belief, Representative Davis coordinated with Legislative Administrator Manning and other unknown state actors to systematically suppress both state-level (LC 2560) and federal-level (SJM1) military civil rights initiatives as retaliation for Plaintiff's protected speech.

52. The rapid killing of SJM1 within hours of the January 27 incident, combined with Manning's withdrawal of support, demonstrates a coordinated conspiracy to silence military civil rights advocacy across all legislative vehicles.

## Coordinated Escalation Through Unknown State Actors

53. On February 18, 2025, LC 2560 became Senate Bill 1057 and was referred to the Committee on Veterans, Emergency Management, Federal and World Affairs, chaired by Senator James Manning, Jr.

54. At 9:43am on February 21, 2025, Plaintiff asserted his intent to exercise his constitutional rights and continue his advocacy efforts despite the office ban, telling Representative Davis "you have no private authority to interfere with the rights guaranteed to Americans under the Constitution."

6

55. At 2:30pm on February 21, 2025, Legislative Administrator Brett Hanes issued a memo significantly expanding the restrictions on Plaintiff's access to the State Capitol, based entirely on the same January 27, 2025 incident that Representative Davis's own staff had deemed insufficient to warrant removal.

56. Upon information and belief, Representative Davis or unknown state actors (John/Jane Does) acting at her direction or in coordination with her, provided information or recommendations to the Legislative Administrator that resulted in the Capitol-wide access restrictions.

57. The timing of this escalation, coming within hours of Plaintiff's assertion of his intent to continue his advocacy, demonstrates coordination between Representative Davis and unknown state actors to systematically exclude Plaintiff and his class from the political process.

58. The Legislative Administrator's memo alleged that Plaintiff's "visits to the Capitol have caused alarm, disruption and concern" and referenced "multiple reports" of concerning conduct, despite the fact that the restrictions were based on a single incident that the involved staff members had characterized as not warranting removal.

59. These restrictions treat Plaintiff as a security threat and require advance notice to Oregon State Police and mandatory escort, effectively excluding him from meaningful political participation.

## Manning's Retaliatory Killing of SB 1057

60. On February 28, 2025, Plaintiff encountered Matt Keating, a "Senior Policy Advisor" to Senator Manning, at a restaurant in Salem, Oregon.

61. Plaintiff, who remained banned from the Capitol, filmed himself asking Keating when Senator Manning would schedule hearings for Senate Bill 1057 and Senate Joint Memorial 1.

62. During this brief public encounter, Plaintiff expressed frustration that he could not obtain answers through normal channels due to his unlawful banishment from the Capitol.

63. Keating repeatedly stated he was "just waiting for my lunch" and declined to provide any information about hearing schedules for military civil rights legislation.

64. Plaintiff posted this video recording on his public advocacy website, as part of his continuing efforts to hold government officials accountable for the legislative process.

65. Following the publication of this video, Senator Manning retaliated by refusing to schedule any hearings for SB 1057, effectively killing the military civil rights legislation.

66. On April 17, 2025, a legislator wrote to a constituent explaining why the bill did not receive a hearing: "I believe the main reason it was not scheduled for a hearing, the straw that broke the camel's back, so to speak, is because of the reported disrespect the requestor of the bill showed to a staff member of the chair."

67. The same legislator explicitly confirmed that Senator Manning killed the bill because "it was reported by the chair's staff that he was confronted in a restaurant by the bill requestor with a video camera."

68. The legislator further explained: "getting a hearing was a bridge too far after it was reported by the chair's staff that he was confronted in a restaurant by the bill requestor with a video camera."

69. Senator Manning's decision to kill SB 1057 was explicitly based on retaliation for Plaintiff's protected speech activity (filming the public encounter with his advisor), not on the merits of the legislation.

70. As a fellow military veteran, Senator Manning understood the importance of military civil rights legislation to veterans and their families, making his retaliatory decision particularly egregious.

71. Senator Manning's abuse of his official authority as committee chair to kill legislation in retaliation for protected speech constitutes a clear violation of Plaintiff's First Amendment rights.

72. This retaliation deprived not only Plaintiff but all Oregon military families of the opportunity to have their civil rights concerns heard in the legislative process.

## Interference with Judicial Proceedings

73. In 2025, Plaintiff filed multiple small claims actions against various state actors related to the constitutional violations described herein.

74. The Oregon Department of Justice, through Defendant Maile, unlawfully entered appearances to represent the state defendants in these proceedings, violating Oregon Revised Statute 46.415(4).

75. On May 15, 2025, Plaintiff served written objections to two proposed Orders circulated by the Oregon Department of Justice.

8

76. On May 16, 2025, Defendant Maile responded to Plaintiff by email, stating: "I have received your objection."

77. On May 23, 2025, Defendant Maile filed two Certificates of Readiness that included demonstrably false assertions that "No objection has been served on" her.

78. At the time these certificates were filed, Plaintiff had outstanding discovery requests for Oregon State Police bodycam footage and other records material to his claims.

79. Plaintiff had specifically notified OSP and DOJ in writing that these records were evidence material to pending litigation, citing relevant case numbers, the withholding of which constituted a violation of Oregon Rules of Civil Procedure, Rules 17 and 36 and Oregon Rules of Professional Conduct Rule 3.

80. Defendant Maile acknowledged receipt of these communications via her Paralegal Michael Hoselton on April 23, 2025, demonstrating actual knowledge of the outstanding discovery.

81. The Certificates of Readiness were materially false and misleading, denying Plaintiff meaningful access to the courts and prejudiced his ability to prosecute his state law claims.

## Pattern of Retaliation and Conspiracy

82. The sequence of events demonstrates a clear pattern of escalating retaliation against Plaintiff for his protected class and advocacy:
    a. Protected speech regarding legislative accountability (January 27, 2025)
    b. Immediate cancellation of SJM1 hearing (January 27, 2025)
    c. Office ban imposed without due process (February 7, 2025)
    d. Capitol ban coordinated through unknown state actors within hours of Plaintiff's assertion of intent to continue advocacy (February 21, 2025)
    e. Filmed public encounter with Senator Manning's "Advisor" seeking information about legislative hearings (February 28, 2025)
    f. Senator Manning kills SB 1057 in retaliation for the video (March-April 2025)
    g. Interference with judicial proceedings (May 2025)

83. The timing and coordination of these restrictions, particularly the rapid escalation from office ban to Capitol ban after Plaintiff asserted his intent to continue his advocacy, demonstrates a conspiracy among Representative Davis, Senator Manning, and unknown state actors to systematically exclude Plaintiff from political participation.

84. These actions were motivated by animus toward Plaintiff's status as a veteran advocate and his willingness to challenge institutional practices through protected speech and

9

legal action.

85. The systematic suppression of both state-level legislation (SB 1057) and federal advocacy (SJM1) demonstrates a coordinated effort to silence military civil rights initiatives associated with Plaintiff's advocacy.

---

# CAUSES OF ACTION

## Claim I: First Amendment Retaliation (42 U.S.C. § 1983)

*Against Davis and Perry in their Individual Capacities*

86. Plaintiff incorporates all preceding allegations by reference.

87. Plaintiff engaged in protected speech and petitioning activity by advocating for military civil rights legislation and expressing intent to discuss legislative accountability with media.

88. Defendant Perry took adverse action by characterizing Plaintiff's protected speech as threatening and calling law enforcement, despite later acknowledging to those same officers that his conduct did not warrant removal.

89. Defendant Davis escalated these restrictions by imposing an office ban and coordinating with unknown state actors to impose Capitol-wide access limitations within hours of Plaintiff's assertion of his intent to continue his advocacy.

90. A reasonable person would be deterred from engaging in similar protected speech due to Defendants' retaliatory actions.

91. Defendants' actions were motivated by and taken in response to Plaintiff's protected First Amendment activity.

92. As a direct and proximate result, Plaintiff suffered concrete injury including exclusion from the political process, loss of access to elected representatives, interference with advocacy efforts, and chilling of protected speech.

## Claim II: First Amendment Retaliation - Legislative Authority Abuse (42 U.S.C. § 1983)

*Against Manning in his Individual Capacity*

93. Plaintiff incorporates all preceding allegations by reference.

94. Plaintiff engaged in protected speech by filming a public encounter with Senator Manning's policy advisor and posting the video as part of his advocacy efforts.

95. Senator Manning took adverse action by using his official authority as committee chair to kill SB 1057 in direct retaliation for Plaintiff's protected speech.

96. Documentary evidence establishes that Senator Manning's decision was explicitly motivated by the video recording, not by any legitimate legislative concerns.

97. Senator Manning's abuse of his official legislative authority to retaliate against protected speech constitutes a particularly egregious violation of the First Amendment.

98. As a fellow veteran, Senator Manning's decision to deprive military families of civil rights protections in retaliation for criticism demonstrates willful indifference to clearly established constitutional rights.

99. A reasonable person would be deterred from engaging in similar accountability journalism due to Senator Manning's retaliatory use of legislative power.

100. As a direct result, Plaintiff suffered concrete injury including the destruction of his legislative advocacy efforts and the denial of civil rights protections to the military community he represents.

## Claim III: Procedural Due Process Violation (42 U.S.C. § 1983)

*Against Davis and John/Jane Does*

101. Plaintiff incorporates all preceding allegations by reference.

102. Defendants deprived Plaintiff of his liberty interest in accessing public facilities and participating in the political process without adequate procedural safeguards.

103. Defendants failed to provide notice of the specific conduct alleged, an opportunity to be heard, or any neutral decision-making process before imposing restrictions.

104. The process provided was fundamentally unfair and violated basic due process requirements.

105. As a direct result, Plaintiff was denied fundamental fairness and suffered concrete harm to his reputation and political participation rights.

## Claim IV: Equal Protection Violation (42 U.S.C. § 1983)

*Against Davis, Perry, Manning, OSP, and ODJ*

106. Plaintiff incorporates all preceding allegations by reference.

107. Military service members and their families constitute a protected class under federal law, as explicitly recognized by Congress in the Hate Crimes Prevention Act of 2009.

108. Defendants treated Plaintiff differently from similarly situated individuals based on his membership in this federally protected class and his advocacy for military civil rights.

109. Discrimination against federally protected classes is subject to heightened constitutional scrutiny, requiring Defendants to demonstrate that their actions serve important governmental objectives and are substantially related to achieving those objectives.

110. Defendants cannot meet this heightened standard, as their restrictions were motivated by animus toward Plaintiff's military status and advocacy, not by any legitimate governmental interest.

111. Similarly situated constituents who are not military veterans or advocates for military issues are not subject to office bans, Capitol access restrictions, or legislative retaliation.

112. This disparate treatment violated Plaintiff's right to equal protection under the law and constitutes discrimination against a federally protected class.

## Claim V: Access to Courts Violation (42 U.S.C. § 1983)

*Against Maile in her Individual Capacity*

113. Plaintiff incorporates all preceding allegations by reference.

114. Defendant Maile, acting under color of state law, deliberately interfered with Plaintiff's right to meaningful access to the courts.

115. By filing false Certificates of Readiness while withholding material evidence, Defendant obstructed Plaintiff's ability to effectively prosecute his state law claims.

116. This conduct was not protected by prosecutorial or quasi-judicial immunity as it involved administrative misrepresentations to the court, not advocacy.

117. Defendant acted with deliberate indifference to Plaintiff's constitutional rights and with knowledge that her representations were false or misleading.

118. As a direct result, Plaintiff was denied fair access to judicial proceedings and suffered prejudice to his legal claims.

## Claim VI: Conspiracy to Violate Civil Rights (42 U.S.C. § 1983)

*Against Davis, Manning, and John/Jane Does*

119. Plaintiff incorporates all preceding allegations by reference.

120. Representative Davis and Senator Manning, acting in concert with unknown state actors, conspired to deprive Plaintiff of his constitutional rights through coordinated restrictions on his political participation.

121. The rapid escalation from office ban to Capitol ban to legislative retaliation, occurring in direct response to Plaintiff's protected advocacy, demonstrates an agreement and coordinated action among the conspirators.

122. The conspiracy was motivated by intent to suppress Plaintiff's protected speech and exclude him from political participation due to his veteran advocacy and willingness to challenge institutional practices.

123. Overt acts in furtherance of the conspiracy include:
    a. The office ban imposed by Representative Davis
    b. Coordination with Legislative Administration for Capitol restrictions
    c. Systematic suppression of related military civil rights legislation, including the killing of federal level SJM1 through procedural manipulation
    d. Manning's withdrawal of previously promised support for military civil rights legislation
    e. Coordinated efforts to damage Plaintiff's "reputation" among legislators to prevent future advocacy success
    f. Retaliatory killing of state level SB 1057 based on protected speech activity

124. As a direct result, Plaintiff suffered deprivation of constitutional rights and concrete harm to his political participation and advocacy efforts.

## Claim VII: Conspiracy to Violate Civil Rights (42 U.S.C. § 1985(3))

*Against All Individual Defendants*

125. Plaintiff incorporates all preceding allegations by reference.

126. Defendants Davis, Perry, Manning, and John/Jane Does conspired to deprive Plaintiff of his constitutional rights through a coordinated campaign of retaliation.

127. The conspiracy was motivated by class-based animus against Plaintiff's status as a military veteran and advocate for military civil rights, a federally recognized protected class under 18 U.S.C. § 1389.

128. Congressional recognition of military families as a protected class in 2009 establishes that discrimination based on military status constitutes the type of class-based animus prohibited by § 1985(3).

129. Defendants' targeting of Plaintiff for his military advocacy demonstrates the "class-based invidiously discriminatory animus" required for § 1985(3) liability.

130. Overt acts in furtherance of the conspiracy include characterizing protected speech as threatening, imposing office and Capitol bans, coordinating restrictions across multiple government entities, and using legislative authority to kill Plaintiff's advocacy efforts.

131. The conspiracy successfully deprived Plaintiff and the entire military community of equal protection under the law and equal access to the legislative process.

## Claim VIII: Municipal Liability (42 U.S.C. § 1983)

*Against OSP and ODJ*

132. Plaintiff incorporates all preceding allegations by reference.

133. Defendants OSP and ODJ maintain official policies, customs, or practices that permit arbitrary enforcement actions, discovery violations, and retaliatory use of legislative authority that deprive individuals of constitutional rights.

134. OSP's policy of enforcing access restrictions based on unsubstantiated allegations without independent investigation violates due process and equal protection.

135. ODJ's custom of making false representations to courts regarding case readiness while withholding discovery violates litigants' access to courts.

136. These policies and customs were the moving force behind the constitutional violations described herein.

137.    Policymakers for these entities acted with deliberate indifference to the constitutional rights of individuals like Plaintiff.

---

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. **Declare** that Defendants' actions violated Plaintiff's rights under the First and Fourteenth Amendments to the United States Constitution;

B. **Enjoin** Defendants from enforcing the current office and Capitol access restrictions against Plaintiff;

C. **Order** Defendants to implement constitutionally adequate procedures for any future access restrictions, including notice, hearing rights, and neutral decision-making;

D. **Award** compensatory damages against individual Defendants for violations of Plaintiff's constitutional rights, including damages for:

- Loss of political participation opportunities
- Interference with constituent services
- Reputational harm
- Emotional distress
- Violation of fundamental rights
- Loss of legislative advocacy effectiveness
- Deprivation of civil rights protections for military community
- Abuse of legislative authority for personal retaliation

E. **Award** punitive damages against individual Defendants to deter future violations of constitutional rights;

F. **Award** nominal damages for constitutional violations;

G. **Award** costs, expenses, and reasonable attorney's fees under 42 U.S.C. § 1988;

H. **Grant** such other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

15

**LOGAN M. ISAAC**
Plaintiff, Pro Se
2818 Orchard Heights Ave NW
Albany, OR 97321
714-559-8025
iamloganmi@gmail.com

Dated: 7/3/25

16