IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

LOGAN MARTIN ISAAC,                                    Case No. 6:25-cv-01159-MC

        Plaintiff,                                    OPINION AND ORDER

      v.

JAMES IVORY MANNING, JR.,
SHELLY BOSHART DAVIS, RENEE
PERRY, and JOHN and JANE DOES 1–10,

        Defendants.

_____

MCSHANE, Judge:

      Self-represented Plaintiff, Logan Martin Isaac, proceeding *in forma pauperis* ("IFP"), brought this action against Oregon legislators and legislative staff who allegedly deprived him of his constitutional rights. Compl., ECF No. 1. The Court screened Plaintiff's Complaint and First Amended Complaint, Am. Compl., ECF No. 9 ("FAC"), pursuant to 28 U.S.C. § 1915(e)(2)(B). The Court found Plaintiff's FAC subject to dismissal in part. Order re FAC, ECF No. 12. Following screening of the FAC, Plaintiff filed a Second Amended Complaint. 2d Am. Compl., ECF No. 13 ("SAC"). For the reasons discussed below, the SAC appears subject to dismissal in part.

## BACKGROUND

      The following allegations are drawn from the SAC. Plaintiff Logan Martin Isaac is a resident of Albany, Oregon and is a disabled United States Army veteran. SAC 2. In 2024, Plaintiff began advocating for state legislation concerning military civil rights. *Id.* Plaintiff is concerned about the prevalence of veteran suicide and believes there is a need for civil rights protections for

veterans and military families. *See id.* at 3. He has discussed military civil rights legislation with members of the Oregon Legislative Assembly, including Defendant Representative Davis, and advocated for proposed legislation that would strengthen protections for veterans and their families. *Id.* at 2–3.

On January 27, 2025, Plaintiff visited Representative Davis's office at the Oregon Capitol to follow up on the status of one such proposed law, "LC 2560." SAC 3. At the meeting, Plaintiff expressed frustration with delays, commenting that "seventeen battle buddies are going to die today," referring to veteran suicide rates, and stated that his "next stop [was] going to be the Oregonian," a local newspaper. *Id.* Plaintiff states that at the meeting, Defendant Renee Perry characterized Plaintiff's statement as a "threat," though Plaintiff alleges he made no threats or nor did he engage in disruptive conduct. *Id.* At some point police were called. *Id.* When Oregon State Police ("OSP") offered to remove Plaintiff, Perry told officers she did not believe Plaintiff should be removed. *Id.*

During this same timeframe, Senate Joint Memorial 1 ("SJM1") was pending before the Oregon legislature. *See id.* At the time of Plaintiff's visit to the Capitol on January 27, 2025, SJM1 was scheduled for hearing the very next day. *See id.* Following Plaintiff's visit to Representative Davis' office, the hearing for SJM1 was "abruptly canceled." *Id.*

On February 7, 2025, Representative Davis banned Plaintiff from her office for one year, citing the January 27 incident. SAC 4. Plaintiff alleges the ban contradicted Perry's statement to OSP that Plaintiff was not threatening. *Id.* Two weeks later, on February 21, 2025, Plaintiff emailed Representative Davis asserting she had "no private authority" to interfere with his constitutional rights. *Id.* Later that day, Legislative Administrator Brett Hanes[1] issued a "Capitol-wide

---

[1] Plaintiff labels Hanes as "Doe 1." SAC 4.

restriction" that required Plaintiff to give advance notice to OSP and have an escort at all times when visiting the Capitol. *Id.* These restrictions were imposed without any "procedure, standards, or neutral review" and based entirely on the January 27 incident. *Id.*

One week later, on February 28, 2025, Plaintiff saw Matt Keating, a Senior Policy Advisor to Defendant Senator James Manning, at a restaurant in Salem, Oregon. SAC 4. Plaintiff filmed himself confronting Keating and published the video online. *Id.* Later, Senator Manning refused to schedule any hearings for a bill Plaintiff supported, "SB 1057," which "effectively terminat[ed]" the bill. *Id.* SB 1057 had been referred to Senator Manning's committee after it was introduced. *Id.* Plaintiff alleges Senator Manning admitted that he refused to schedule a hearing on SB 1057 because Plaintiff confronted Keating, which Senator Manning deemed "disrespectful." *Id.* Plaintiff asserts Senator Manning's decision "did not rest on the bill's legislative merit." *Id.* at 5. Plaintiff alleges that the actions of Representative Davis, Senator Manning, and their staff, which occurred close in time to one another and with a common "retaliatory narrative," are evidence of a conspiracy to retaliate against him for his advocacy in the form of restrictions on his access to the Capitol and the "suppressing" of SB 1057. *See id.* at 7–8.

## **LEGAL STANDARD**

Pursuant to 28 U.S.C. § 1915(e)(2)(B), a court must screen the complaint to determine whether the plaintiff has raised a cognizable legal claim. *See, e.g.*, *O'Neal v. Price*, 531 F.3d 1146, 1151 (9th Cir. 2008). "[T]he court shall dismiss the case at any time if the court determines that" the action "is frivolous or malicious," "fails to state a claim on which relief may be granted," or "seeks monetary relief against a defendant who is immune from such relief." § 1915(e)(2)(B). A court liberally construes pleadings by self-represented plaintiffs. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623 (9th Cir. 1988). The Court applies the same standard it applies to a

motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) to assess whether the complaint states a claim. *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). To survive a motion to dismiss under the federal pleading standards, the complaint must include a short and plain statement of the claim and "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal citation omitted). The Court is not required to accept legal conclusions, unsupported by alleged facts, as true. *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Plaintiff asserts claims for retaliation under the First Amendment, violation of his right to procedural due process under the Fourteenth Amendment, conspiracy to violate constitutional rights, and for injunctive relief under the doctrine of *Ex parte Young*. SAC 6–8. Apart from Plaintiff's claims implicating legislative conduct, liberally construing Plaintiff's SAC, Plaintiff may have viable, non-frivolous claims.

## I.    Damages Claims

### A.    Legislative Immunity

Senator Manning is entitled to absolute legislative immunity for Plaintiff's First Amendment retaliation and conspiracy claims. State, regional, and local legislators are immune from liability under Section 1983 for their legislative acts. *Kaahumanu v. County of Maui*, 315 F.3d 1215, 1219 (9th Cir. 2003). The Ninth Circuit has developed a four-factor balancing test to distinguish legislative acts from other non-legislative or "ministerial" acts: "(1) whether the act

involves ad hoc decisionmaking, or the formulation of policy; (2) whether the act applies to a few individuals, or to the public at large; (3) whether the act is formally legislative in character; and (4) whether it bears all the hallmarks of traditional legislation." *Kaahumanu*, 315 F.3d at 1220 (internal quotation marks omitted); *Jones v. Allison*, 9 F.4th 1136, 1140 (9th Cir. 2021).

As explained in screening the FAC, Plaintiff's allegations regarding Senator Manning squarely implicate legislative functions. Senator Manning's decision to cancel the hearing was not a ministerial act, instead representing a decision "within his discretion as committee chair" (SAC 5) as to an "integral step[] in the legislative process," without which SB 1057 could not become law. *Bogan v. Scott-Harris*, 523 U.S. 44, 55 (1998); *see Cmty. House, Inc. v. City of Boise*, 623 F.3d 945, 964 (9th Cir. 2010) (granting legislative immunity to mayor who "signed the Ordinances and approved the Resolutions passed by the City Council," making him "intricately involved" in the City Council's legislative process). Though Plaintiff casts the act of cancelling the hearing as one directed at him and motivated by retaliation for his advocacy, the effect of the act was the non-passage of a generally applicable law, SB 1057. *See Kuzinich v. Santa Clara County*, 689 F.2d 1345, 1347–49 (9th Cir. 1982) (finding zoning ordinance that had immediate practical effect on only limited number of parcels of land held by the same owner, but by its terms applied to all parcels within the covered area, was a rule with general application). Unlike Plaintiff's ban from the Capitol building, for instance, Senator Manning's decision was not a decision that affected Plaintiff alone. This is so even if Plaintiff had a greater interest in the outcome of the legislative process as a principal advocate for SB 1057.[2] Further, Senator Manning's motivations do not affect the legislative nature of the act. *See Cmty. House*, 623 F.3d

---

[2] *Cf. Reza v. Pearce*, 2012 WL 1392991, at *2 (D. Ariz. Apr. 23, 2012) (finding order excluding the plaintiff from state senate building was ad hoc and not generally applicable because it was "directed towards a specified individual" and "not related to the creation or implementation of broader policy to promote decorum within the Senate building").

at 964 (citing *Tenney v. Brandhove*, 341 U.S. 367, 377 (1951)) ("Courts must be extremely careful that considerations of a legislator's motive do not infect the determination of whether an act is legislative."). Accordingly, stripped of any consideration of Senator Manning's motives, his conduct involved the formulation of policy that would affect the public at large.

Weighing the factors indicates Senator Manning's conduct falls squarely within that conduct protected by legislative immunity. To be sure, Plaintiff alleges Senator Manning's decision lacked "deliberation, debate, public input, committee process, or consideration of policy merits" that represent the hallmarks of traditional legislation, but the decision undeniably has a legislative character as it related directly to the process of lawmaking—in this case, the "terminating" of a bill in committee. *Cf. Selene v. Legislature of Idaho*, 514 F. Supp. 3d 1243, 1253 (D. Idaho 2021) (finding disability accommodation decisions at state legislature building during COVID-19 pandemic that were "not open to vote, [or] debate" and also did not "otherwise carry legislative character or any of the hallmarks of traditional legislation" were not legislative acts).

For these same reasons, Representative Davis is immune for her conduct in connection with the cancellation of a hearing on SJM1. Because Defendants Senator Manning and Representative Davis are immune from suit for legislative conduct, Plaintiff's claims against them fail.

### B. **Remaining Claims**

To the extent they relate to the restrictions on Plaintiff's access to the Capitol and Representative Davis's office, Plaintiff's claims against Representative Davis, Perry and the Doe Defendants (including Hanes), appear minimally sufficient to survive screening under Section 1983 for First Amendment retaliation and Fourteenth Amendment due process violations. SAC 6–

7. Plaintiffs' allegations also appear minimally sufficient to allege a claim for conspiracy to violate his civil rights against Representative Davis, Perry and Doe Defendants. *Id. at* 7–8. As noted, because Plaintiff cannot state a claim based on the legislative conduct of either Senator Manning or Representative Davis, Plaintiff's claim for conspiracy to violate his civil rights is likewise limited to an alleged conspiracy concerning restrictions on his access to the Capitol. As to this conduct, the SAC contains no factual allegations plausibly implicating Senator Manning. See *Karim-Panahi*, 839 F.2d at 626 (holding a plaintiff "must allege facts to support the allegation that defendants conspired together. A mere allegation of conspiracy without factual specificity is insufficient.").

## II.    <u>Injunctive Relief</u>

Plaintiff asserts a claim for injunctive relief according to the doctrine of *Ex parte Young* against Representative Davis and Doe Defendants. SAC 8. Plaintiff seeks to enjoin continued enforcement of restrictions on his access to the Capitol; both his ban from Representative Davis' office as well as Capitol-wide restrictions.[3] The Eleventh Amendment does not bar suits against state officers and employees in their official capacity seeking prospective injunctive relief—that is, a court order requiring the defendant to take, or to refrain from taking, certain actions to protect the plaintiff's rights. *Ex parte Young,* 209 U.S. 123, 149–56 (1908). The proper defendant in such an action is a state official who has "some connection with the enforcement" of the alleged unconstitutional order or policy. *Id.* at 157. "An allegation of an ongoing violation of federal law . . . is ordinarily sufficient to invoke the *Young* fiction." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 US 261, 281 (1997). As to alleged ongoing constitutional violations caused by the office ban and the Capitol-wide restrictions, Plaintiff's allegations appear minimally sufficient to state a claim

---

[3] Representative Davis' office ban will expire in February 2026. SAC 8.

for prospective injunctive relief here.[4]

Plaintiff also states he seeks declaratory relief and nominal damages regarding alleged constitutional violations; however, *Young* does not authorize suits for *retrospective* money damages against state officials for their acts, nor for adjudicating legality of past conduct. *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F3d 858, 864 (9th Cir. 2016) (citing *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004)).

## CONCLUSION

As discussed above, Plaintiff's Second Amended Complaint (ECF No. 13) appears subject to dismissal in part. If the Court finds that a complaint should be dismissed for failure to state a claim, the Court has discretion to dismiss with or without leave to amend. *Lopez v. Smith*, 203 F.3d 1122, 1126–30 (9th Cir. 2000) (en banc). Because they have now been dismissed twice in this case and it is clear they cannot be cured by amendment, Plaintiff's claims against Senator Manning are DISMISSED WITHOUT LEAVE TO AMEND. *Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995) ("A pro se litigant must be given leave to amend his or her complaint, and some notice of its deficiencies, unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment."). Senator Manning is dismissed as a defendant in this action.

Plaintiff's allegations appear minimally sufficient to pass screening for his claims of First Amendment retaliation, denial of procedural due process under the Fourteenth Amendment, and conspiracy to violate civil rights against Representative Davis, Perry, and Doe Defendants. Plaintiff's allegations also appear minimally sufficient to survive screening on a claim for

---

[4] Plaintiff also refers vaguely to "any state policies applied in a retaliatory or unconstitutional manner." SAC 8. Plaintiff cannot state a claim under *Young* as to such unspecified policies. *Ariz. Students' Ass'n*, 824 F.3d at 865 (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991), *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 & n.55 (1978)).

prospective injunctive relief under the *Young* doctrine to prevent ongoing enforcement of allegedly unconstitutional restrictions on his access to the Capitol.

IT IS SO ORDERED.

DATED this 22nd day of January 2026.

_____s/Michael J. McShane_____
Michael McShane
United States District Judge